# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 23-364V

|  |  |
|---|---|
| CHRIS WATSON, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: June 20, 2025 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Amy A. Senerth, Muller Brazil, LLP, Dresher, PA*, for Petitioner.

*Parisa Tabassian, U.S. Department of Justice, Washington, DC*, for Respondent.

### DISMISSAL DECISION[1]

On March 14, 2023, Chris Watson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, as a result of an influenza ("flu") vaccine he received on October 2, 2020. Petition ¶ 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the foregoing reasons, I find that Petitioner has provided insufficient proof of severity of injury, as required for all Vaccine Act claims. *See* Section 11(c)(1)(D)(i).[3] Petitioner's claim is thus **DISMISSED.**

## I.    Relevant Procedural History and the Parties' Arguments

Prior to Respondent's informal assessment of the instant claim, and upon a cursory but thorough review of the filed record (including the petition, medical records, and declaration filed to-date), I issued an Order to Show Cause. ECF No. 13. As noted therein, the evidence revealed significant deficiencies in Petitioner's case related to his ability to establish the statutory six-month "severity requirement." *See generally id.*

In response (and after receiving three extensions of time, ECF Nos. 14-16), Petitioner submitted three additional witness declarations – two authored by friends and the third by Petitioner himself, along with an updated medical record outside the relevant gap in treatment bearing on severity. ECF No. 17. Petitioner also submitted a written response brief. ECF No. 18. In it, he argued that he can establish that he suffered the residual effects of his injury for more than six months, as "there is nothing in the record to support that [his] pain resolved during the 8[-]month gap in treatment, and no indication that he re[-]injured his left shoulder." *Id.* He relied on statements made in his declarations to argue his decision to forego treatment had a logical explanation – that his steroid injection did not help, and he did not want to pay for out-of-pocket expenses. *Id.* at 7-8.[4]

Respondent thereafter filed his Rule 4(c) Report and reply to Petitioner's brief in June 2024. ECF No. 21. Among other things,[5] Respondent contended that Petitioner had not established the existence of residual effects of the alleged injury for more than six months after the October 2, 2020 vaccination. Respondent's Report at 6-10 (citing Section 11(c)(1)(D)(i)). This is due to the existence of a substantial temporal gap in the medical records during which Petitioner did not report ongoing symptoms. *Id.* at 7. Respondent argued the record actually suggests that when Petitioner returned to care, his treaters did not assess him with a left shoulder injury, nor one attributable to the subject vaccination; rather, the treater documented a right shoulder diagnosis. *Id.* (citing

---

[3] Petitioner does not allege, nor would the evidence support, either alternative for establishing the severity requirement: that the alleged injury resulted in death, or "inpatient hospitalization and surgical intervention." Section 11(c)(1)(D)(ii), (iii). Rather, this case turns on Petitioner's inability to prove six months of post-onset sequelae.

[4] Relying on witness declarations, Petitioner also contended that his injury was otherwise consistent with a Table SIRVA. ECF No. 18 at 7-8.

[5] Respondent also argued Petitioner cannot establish a Table SIRVA, as his medical records do not show the onset of his left shoulder pain began within 48-hours of vaccination and none of his medical providers ever recorded reduced ROM deficits. Respondent's Report at 11-12 (internal citations omitted).

Ex. 3 at 85-86). Respondent also points out that Petitioner did not return for left shoulder symptoms until February 2024 – three years and four months post-vaccination, two years and six months after Petitioner's previous complaint of left shoulder pain, and after my Order to Show Cause. *Id.* at 8 (citing Ex. 9 at 1-3) (emphasis omitted). And he asserts the declarations submitted in support of severity cannot be the sole basis on which to find severity met. *Id.* at 8-9. Respondent thus requests dismissal of Petitioner's claim. *Id.* at 10, 12. The issue of severity is now ripe for adjudication.

## II.     Contemporaneous Medical Records

Petitioner received the flu vaccine alleged as causal on October 2, 2020. Ex. 1 at 3. Petitioner's first post-vaccination visit for left shoulder pain occurred on November 12, 2020, over one month post vaccination, at a pain clinic. Ex. 2 at 10. Petitioner "complain[ed] of pain located in the left shoulder." *Id.* The physician noted that "[c]ompared to the last visit[,][6] the pain is worse" and is associated with an "inability to workout." *Id.* Petitioner was assessed with a general "joint ache." *Id.* at 11. Petitioner did not attribute the pain to a prior vaccination at this time.

One week later, on November 19, 2020, Petitioner returned to the pain clinic with ongoing complaints of left shoulder pain. Ex. 2 at 8. Petitioner received a lidocaine injection in the left shoulder. *Id.* Petitioner again did not relate his pain to his vaccination.

On December 9, 2020, Petitioner had a routine annual wellness visit with his primary care provider ("PCP"). Ex. 3 at 46. Of note, Petitioner complained of left shoulder pain and "[w]onder[ed] if [the pain is] from a flu shot." *Id.* An examination was normal, and no abnormalities of the left shoulder were noted. *Id.* at 47. This is the first time Petitioner relates, albeit equivocally, his pain to the vaccination. The assessment does not include one pertaining to the left shoulder and no further treatment for Petitioner's left shoulder pain was suggested. *Id.* at 47-48.

There is then an over eight-month gap in Petitioner's treatment for shoulder pain – during which Petitioner did not seek care for any unrelated ailments. Following the gap, Petitioner returned to his PCP's office on August 30, 2021. Ex. 3 at 85. Petitioner's chief complaint was listed as "L[eft] shoulder injury [follow-up] for SIRVA." *Id.* He stated that he "feels like he has SIRVA after a flu shot in October." *Id.* An examination was positive for "*R* [sic] arm pain," however. *Id.* at 86 (emphasis added). Petitioner was assessed with *right* arm pain and was referred to physical therapy ("PT") for such pain. *Id.* (emphasis added). The PCP also noted that Petitioner "may need a note to get out of a future trip due to the R [sic] arm pain." *Id.*

---

[6] There is no evidence of a prior visit for Petitioner's vaccine-related left shoulder pain.

Petitioner did not seek shoulder-related care thereafter[7] until February 2024 – nearly two and a half years since his last visit for alleged vaccine-related shoulder pain (in August 2021). Indeed, on February 20, 2024, Petitioner saw another provider at his PCP's office for an annual physical. Ex. 9 at 1. Petitioner reported several issues including "shoulder issue, left shoulder." *Id.* Specifically, Petitioner reported "dealing with a SIRVA case after a flu shot in 2021 [sic]. Unfortunately, his previous PCP documented the wrong arm so the case was thrown out. Symptoms were in the left arm, not his right. Would like to pursue this again with proper documentation" *Id.* Despite a physical examination revealing no left shoulder abnormalities, the PCP assessed Petitioner (in relevant part) with a SIRVA. *Id.* at 2-3. No additional medical records have been filed.

### III.    Witness Declarations

Through witness declarations (some specifically drafted after my Order to Show Cause highlighting the specific deficiencies in the record related to severity), Petitioner maintains that he can establish the Act's six-month requirement.

In his original witness declaration, Petitioner attests that he had pain in his shoulder "the next day" following receipt of his flu shot that has "never subsided still to this day." Ex. 5 ¶ 4. He noted that he has never experienced this type of pain from a flu shot, "where the soreness lasted more than 2 weeks." *Id.* In his supplemental declaration (authored in 2024), he notes that he "absolutely did have and still continue[s] to have the same pain to this day." Ex. 6 ¶ 7.

Petitioner explains that he did not seek treatment between December 2020 and August 2021 because "the shot from the pain clinic did not work whatsoever, and the additional costs seem to be a waste of money to try again." Ex. 5 ¶ 6. As support, Petitioner explained that he was "responsible for the deductible for the shot at the pain clinic." *Id.*; Ex. 6 ¶ 7. Instead, he explains that he "tried light stretching and ice a lot." Ex. 6 ¶ 7.

Petitioner also addresses the August 2021 notation reflecting a complaint of right shoulder pain in his medical record. Ex. 6 ¶ 10. He states that his "attorney contacted [him] about a mistake" and thus when he sought care with a new PCP in February 2024, the treater "made a note . . . that [his] previous PCP made a mistake by noting [his] right shoulder[;]" and "of course it has always been [his] left arm." *Id.* ¶¶ 10-11.

---

[7] Petitioner had a number of additional medical visits for unrelated issues throughout 2021-2023, during which he did not complain of left shoulder issues. *See,* e.g., Ex. 3 at 30 (a December 6, 2021 PCP appointment for medication refills and sinus congestion); Ex. 4 at 13-15 (a June 6, 2022 ER visit for a cheek laceration from playing pickleball); Ex. 10 at 68 (a June 15, 2023 PCP annual visit reporting lower back pain from a recent car accident); Ex. 10 at 71 (an August 30, 2023 PCP visit for back pain).

In 2024, Petitioner's co-worker submitted a witness declaration on Petitioner's behalf and notes that "every now and then over the years" since the 2020 vaccination, Petitioner has told him his shoulder "'still hurts.'" Ex. 7 ¶ 5. This co-worker also noticed "a few years ago" that Petitioner was unable to help out at work due to his shoulder pain. *Id.* ¶ 3. Another one of Petitioner's co-workers attests that Petitioner's "shoulder has not gotten better" since the October 2020 flu shot. Ex. 8 ¶¶ 2, 4. The co-worker described an incident where Petitioner dropped a door due to pain from his shoulder, but the co-worker "d[id] not recall the date[;]" but he knew "it was months after he received the flu shot." *Id.* ¶ 5. No additional affidavit and/or witness declaration evidence has been submitted.

## IV.    Applicable Legal Standard

Petitioners carry the burden of establishing the matters required in the petition by a preponderance of the evidence. Section 13(a)(1)(A). One such requirement is "documentation demonstrating that [the petitioner][8] ... suffered the residual effects or complications of such [vaccine-related] illness, disability, injury, or condition for more than 6 months after the administration of the vaccine." Section 11(c)(1)(D)(i); *see also Black v. Sec'y of Health & Hum. Servs.*, 33 Fed. Cl. 546, 550 (1995) (reasoning that the "potential petitioner" must not only make a *prima facie* case, but clear a jurisdictional threshold, by "submitting supporting documentation which reasonably demonstrates that a special master has jurisdiction to hear the merits of the case"), *aff'd*, 93 F.3d 781 (Fed. Cir. 1996) (internal citations omitted).

Congress has stated that the severity requirement was designed "to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine." H.R. REP. 100-391(I), at 699 (1987), reprinted in 1987 U.S.C.C.A.N. 2313–1, 2313–373, cited in *Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1335 (Fed. Cir. 2011), *cert. denied,* 132 S.Ct. 1908 (2012); *Wright v. Sec'y of Health & Hum. Servs.*, 22 F.4th 999, 1002 (Fed. Cir. 2022).

The Act prohibits finding a petition requirement "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." Section 13(a)(1). Medical records must be considered, *see* Section 13(b)(1), and are generally afforded substantial weight. *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records

---

[8] Or other vaccinee, e.g., a minor or other person who is unable to represent his or her own interests, on behalf of whom the claim is brought.

are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

It is thus certainly the case that factual matters required to prove elements of a Vaccine Act claim may be established by a *mix* of witness statements and record proof, with the special master required to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184 (2013) (citing Section 12(d)(3); Vaccine Rule 8), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

## Analysis

I note preliminarily that Petitioner not only had opportunity to prepare his claim prior to filing, but was put on notice over the subsequent duration of the case that severity was an issue to be addressed. Yet even after Respondent submitted his formal position in his Rule 4(c) Report (and my preceding Order to Show Cause), Petitioner *has not submitted additional evidence* or established why additional time is merited to do so. Petitioner has thus now had a "full and fair opportunity" to support his position. Vaccine Rule 3(b).

There appears to be no dispute that Petitioner received the flu vaccine on October 2, 2020, and he therefore must demonstrate by preponderant evidence that his residual symptoms continued for more than six months thereafter from the onset of his symptoms. *See,* e.g., *Herren v. Sec'y of Health & Hum. Servs.,* No. 13-100V, 2014 WL 3889070, at *2-3 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Hum. Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's Guillain-Barré syndrome resolved less than two months after onset). While to date Petitioner has been unable to establish his claim that the onset of his symptoms occurred the day following his vaccination as alleged, *assuming arguendo*[9] that he could do so, he would also need to establish his shoulder injury was extant as of April 2, 2021.

The record lacks preponderant evidence in favor of that finding. Prior to the significant approximate eight-month gap in treatment, Petitioner had a PCP wellness visit on December 9, 2020 (just roughly two months post vaccination). Ex. 3 at 46-48. While he self-reported left shoulder pain at this time, an examination was normal and/or one focused on the left shoulder was not performed. *Id.* at 47-48. And, no further treatment or

---

[9] As previously noted above and described in my Order to Show Cause, the record does not appear to support the conclusion that the onset of Petitioner's post-vaccination left shoulder pain occurred within 48 hours of the subject vaccination, as Petitioner's medical records do not describe onset with any particularity. *See,* e.g., Ex. 2 at 8, 10-11; Ex. 3 at 46, 85. As the issue of severity is dispositive in this case, I do not find it necessary to make a finding as to Table onset. But for ease of argument here regarding severity, I will assume that a showing of Table-consistent onset has been met.

medication was recommended to address his alleged ongoing left shoulder symptoms. *See id.* This record thus does not support Petitioner's assertions that his pain was ongoing much longer after this visit, as his complaint is not corroborated by findings on examination or additional recommended treatment for the left shoulder specifically. A lack of recommended ongoing treatment likewise supports the conclusion that Petitioner's treater thought his left shoulder symptoms did not require much, if any, formal medical treatment to resolve after this time.

More problematically, the medical records following the gap do not support the conclusion that Petitioner experienced ongoing symptoms during the gap. Although when Petitioner returned to care on August 30, 2021, he reported that he was seeking care associated with a prior SIRVA, he had not been so previously assessed. *See* Ex. 3 at 85. At most, Petitioner "wonder[ed]" if his left shoulder pain could be related to his flu vaccination during his December 9, 2020 PCP visit, but *this* treater did not at that time (or any time since then) conclude that Petitioner's injury was related to his flu vaccination – let alone call it SIRVA. *Id.* at 46-48.

Then, during Petitioner's August 30, 2021 visit, an examination revealed *right* arm pain, for which Petitioner received a recommended treatment course, including a referral to PT. Ex. 3 at 85-86. No abnormalities regarding the left, vaccinated shoulder were noted. *See id.* I noted in my Order to Show Cause that it was unclear from this record whether the notation for right arm pain was made in error or was, in fact, intended to refer to a new complaint concerning Petitioner's right shoulder. ECF No. 13 at 5. To address this discrepancy, Petitioner now contends (in his 2024 witness declaration) that this was a mistake, and when he sought care with a new PCP in February 2024, the new treater "made a note . . . that [his] previous PCP made a mistake by noting [his] right shoulder." Ex. 6 ¶ 10.

But Petitioner's position is not fully supported by the contemporaneous medical records. The record from February 20, 2024, does reflect a report that Petitioner's previous PCP, in fact, "documented the wrong arm . . . . Symptoms were in the left arm, not his right[,]" but the complete context of the record shows that Petitioner also reported his prior "SIRVA case" was "thrown out" because of this alleged error. Ex. 9 at 1. This report, however, appears to have been made by Petitioner to a treater for the purpose of litigation, as Petitioner also admits he "[w]ould like to pursue this again with proper documentation." *Id.* More so, this statement was made nearly *four years* post-vaccination, over 11 months after initiation of the instant claim, and three months after my Order to Show Cause. And despite Petitioner's report of left shoulder pain linked to the flu vaccine on February 20, 2024, Petitioner did not ultimately exhibit any left shoulder symptoms

upon examination. *Id.* at 2-3. Thus, these post-gap records do not bulwark Petitioner's severity arguments all that much.

This matter is otherwise complicated by the limited number of medical records filed in this case. The existing record memorializes only *five* total medical visits for Petitioner's alleged shoulder pain – one of which occurred well into the pendency of the instant claim and after a *considerable* gap in care (in February 2024). For instance, Petitioner's August 30, 2021 record recommending PT (potentially for the non-vaccinated shoulder) stands on its own; it followed a substantial gap in treatment, and was Petitioner's last visit for left shoulder pain before 2024. The fact that Petitioner's PCP recommended PT to address Petitioner's alleged shoulder pain in August 2021 and Petitioner did not seek such further treatment (for either shoulder), fails to bolster his argument that his injury lasted longer than six months post vaccination.

I also do not find that the witness statements supplied by Petitioner overcome the existing medical record discussed above, even if they merit *some* weight. For instance, Petitioner's purported explanation for the eight-month gap in care is reasonable but not entirely persuasive in light of the entire record. Indeed, to explain the subsequent eight-month gap in treatment from December 2020 through August 2021, Petitioner states that he did not experience relief from his November 19, 2020 lidocaine injection, so he was unwilling/unable to continue paying the cost of further treatment or another injection, as he was responsible for the deductible. Ex. 5 ¶ 6; Ex. 6 ¶ 7. Petitioner's assertions of continuing pain are inconsistent with a lack of ongoing care both after December 2020 and then again after August 2021.

More so, Petitioner's assertions of ongoing pain are otherwise uncorroborated, as his witness declarations likewise do not describe ongoing pain during the relevant gap in care, specifically, or leading up until April 2021. Despite stating that "every now and then" since 2020, Petitioner still tells his co-worker he has pain, that does not describe exactly when (between 2020 and the drafting of the declaration in 2024) Petitioner allegedly reported this to his co-worker. Ex. 7 ¶ 5. Petitioner's other co-worker also could not define the timeframe of Petitioner's ongoing pain with any particularity, generally recalling an incident "months after the flu shot" in 2020 or thereafter where Petitioner dropped a door and noting that Petitioner's shoulder has "not gotten better." Ex. 8 ¶¶ 4-5.

A description of pain precisely during the relevant treatment gap including through the six-month severity "cut-off" (April 2, 2021), is something that a person close to Petitioner could well have provided useful commentary upon. Given Petitioner's limited post-vaccination care, some contextual medical explanation was needed, but these witnesses did not provide it. Additionally, these declarations were authored for the

purposes of litigation, after the filing of the instant claim, and even after the issuance of my Order to Show Cause. I therefore do not give the declarations much, if any, weight in resolving severity.

The record, therefore, does not contain sufficient evidence to establish that Petitioner suffered the residual effects of his alleged SIRVA injury beyond December 2020. And Petitioner has failed to link the pain he experienced in August 2021 or thereafter to his earlier pain and the flu vaccine he received.

## CONCLUSION

Petitioner has presented insufficient proof to establish the six-month severity requirement. Section 11(c)(1)(D). Therefore, he is ineligible to pursue compensation under the Program. In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk of Court shall enter judgment in accordance with this Decision.[10]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[10] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.